**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| INDUCTION INNOVATIONS, INC. | ) | |
| An Illinois Corporation, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. |
| | ) | |
| QUALITEK INTERNATIONAL, INC., | ) | |
| LACE TECHNOLOGIES, INC. d/b/a | ) | |
| BoltbusterInc., and CHARLES HAN, | ) | Judge |
| an Individual, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff Induction Innovations, Inc. ("III") complains of corporate defendants Qualitek

International, Inc. ("Qualitek") and LACE Technologies, Inc. ("LACE") d/b/a BoltbusterInc.,

(collectively "Defendants"), as follows:

**The Parties**

1.      Plaintiff III is an Illinois corporation with its principal offices at 1175 Jansen

Farm Ct., Elgin, Illinois 60123.

2.      Defendant Qualitek is an Illinois corporation with its principal offices at 315

Fairbank Street, Addison, Illinois, and with principals Phodi Han (President) and Emily Han

(Secretary) (Exhibit A).

3.      Defendant LACE is an Illinois corporation with its principal offices also at 315

Fairbank Street, Addison, Illinois 60101, and with the same principals as Qualitek: Phodi Han

(President) and Emily Han (Secretary) (Exhibit A).

**Background Facts**

4.      III has been manufacturing and selling induction heaters for the automotive

aftermarket since December, 2000.  In the course of developing and marketing its induction

heaters, III has developed and used a great deal of proprietary technology, including copyrights,

trademarks, trade secrets, trade names, trade dress, customer and vendor information, bills of

materials and artwork concerning its printed circuit board (PCB) technology, including Gerber

files[1].

5.      Beginning in 2004, and continuing until about early September, 2011, III began

using Defendants LACE and Qualitek to manufacture III's MINI-DUCTOR® induction heating

units and accessories ("the MINI-DUCTOR®").  The MINI-DUCTOR® was entirely designed

by III.  III found it convenient to have the Defendants manufacture the MINI-DUCTOR® for III

given that: (1) Qualitek was to use its Research and Development Assembly Line for electronic

contract manufacturing; (2) Jerry Marinello, a LACE employee, and formerly of Assembled

Circuits (now dissolved), had built III products and had previous knowledge and expertise in

building III products; and (3) Qualitek owns Asian manufacturing facilities capable of

economically manufacturing the PCBs used in the MINI-DUCTOR®.

6.      In September of 2011, Jerry Marinello, largely responsible for coordinating the

manufacture of the MINI-DUCTOR®, left LACE to work for a new company, CBUS, Inc.  III

terminated its relationship with LACE in early September, 2011, and authorized Mr. Marinello to

"take possession of all properties belonging to [III]" (9/26/11 Gough letter, Exhibit C).  In

March, 2012, III learned that LACE's Charlie Han had contacted one of III's vendors, SBE,

---

[1]      The Gerber format is a file format used by PCB industry software to describe the images of a PCB (copper layers, solder mask, legend, drill holes, etc.).  The Gerber format is the *de facto* industry standard for PCB image transfer.  http://en.wikipedia.org/wiki/Gerber_file Gerber files contain information useful to the manufacture of specific PCBs.

seeking III proprietary information about a component (a particular type of capacitor with a special rating) necessary to the manufacture of III's MINI-DUCTOR® induction heater. III became concerned that LACE and Qualitek were seeking to copy III's MINI-DUCTOR®. III's Philip Kiss, notified the elder Hans at Qualitek and Charlie Han at LACE that Charlie Han was attempting to acquire proprietary information of III, advising that this was "illegal," threatening litigation if this occurred, and demanding that LACE destroy or immediately return any III proprietary information still in LACE's possession (3/30/12 Kiss Letters, Exhibit D).

7.      III received no response from LACE to its counsel's letters. Instead, in August, 2012, III was notified by a different one of its vendors, Magnetic Coil Mfg. Co. that Charlie Han was again attempting to obtain III confidential information concerning an III custom-wound transformer necessary to the manufacture of the MINI-DUCTOR®. III's vendor advised Charlie Han that the part was proprietary to III, and that Magnetic Coil Mfg. Co. could not legally supply it to Mr. Han, but Mr. Han responded that he was not concerned.

8.      Then, in November of 2012, III learned that the Defendants had in fact copied the MINI-DUCTOR®, and had begun to sell it under the name of the "BoltBuster." Indeed, the Defendants' copying is so meticulous that the BoltBuster PCBs are identical to the MINI-DUCTOR® PCBs – even to the point of reproducing "Induction Innovations" and III's copyright mark, which is blacked out on the BoltBuster PCB! To sell its BoltBuster product, the Defendants are also using III's registered trademarks, including MINI-DUCTOR® and INDUCTION INNOVATIONS®, its MINI-PAD common law trademark, and its trade dress (for example, the BoltBuster induction heater has the same cylindrical shape – unique in the industry to III – and the same yellow color with red lettering). The Defendants have also taken and used III's copyrights, including III's Gerber files and substantial portions of III's MINI-DUCTOR®

manual.  Discovery will also likely show that the Defendants have taken and used III's vendor and customer information, and its bill of materials – taken while the Defendants were manufacturing the MINI-DUCTOR® for III -- in manufacturing the copied BoltBuster induction heating units.

9.    As shown below, a preliminary injunction should be issued[2] to halt the damage done to III's business by the Defendants' willful and inexcusable behavior.

10.    On information and belief, Charles Han is the son of Phodi and Emily Han, and Charles Han is also a Technical Director at LACE and runs a business within LACE known as "BoltBusterInc."  (See attached publicly available information and website pages, Exhibit B.) BoltbusterInc. has the same street address, 315 Fairbanks Avenue, Addison, Illinois, and the same telephone number, 630-628-8083, as Qualitek and LACE (*cf.* Exhibits A and B).

11.    Since June of 2004, LACE has built induction heating units on behalf of, and for sale by, III.  As a result, LACE and its parent company, Qualitek, acquired certain confidential and proprietary information of III, including information valuable and necessary to the manufacture and sale of III's MINI-DUCTOR® induction heater units, including but not limited to III's bill of materials, the identity of III vendors and customers, III blueprint files of circuit boards (known as "Gerber files"), etc.  ("III Confidential Information").

12.    III's relationship with LACE was terminated in September of 2011, and a former LACE employee, Jerry Marinello (now the President of Circuits By US, Inc.), who had previously manufactured III products when affiliated with a company known as Assembled

---

[2]    The Defendants did not begin to advertise and sell the BoltBuster induction heater until about November, 2012, and III has moved as quickly as reasonably possible to file this action and seek a preliminary injunction.

Circuits, was then directed to "take possession of all properties belonging to Induction

Innovations, Inc." (Exhibit C, 9/26/11 Gough/III letter).

13.     In March of 2012, Charles Han contacted one of III's vendors, SB Electronics,

Inc., requesting III confidential information concerning one of III's components for its MINI-

DUCTOR®/MD-600, a capacitor.  III advised SBE *not* to add Charles Han to the approved list

of individuals receiving information on the capacitor in question, and further warned,

prophetically, that Charles Han's intention is "to copy our product" (3/12 emails, Exhibit Q).

14.     On March 30, 2012, III's counsel, Philip Kiss, sent the Hans, LACE,  and its

parent Qualitek (owned by Charles Han's parents), letters demanding that "all of [Induction's]

proprietary information be returned to it immediately or be destroyed" (Exhibit D).  The letters

also warned that their "attempt to get this proprietary information [from Induction's vendors and

customers] is illegal and actionable on our part." *Id.*  Finally, the letters threatened legal action if

Induction proprietary information was taken.  *Id.*

15.     In about August, 2012, III was again notified by a different vendor, Magnetic Coil

Mfg. Co., that Charles Han was again attempting to obtain III Confidential Information

concerning an III custom-wound transformer.  On information and belief, this vendor advised

Charles Han that the part is proprietary to III, and that Magnetic Coil Mfg. Co. could not legally

supply it to Charles Han; Mr. Han advised that he was not concerned, and requested that he be

supplied anyway.

16.     On information and belief, Charles Han, LACE  and Qualitek d/b/a BoltBusterInc

have intentionally copied and used III's confidential information, as delineated further below.

## COUNT 1 – COPYRIGHT INFRINGEMENT

17.     This is a claim for copyright infringement arising under the copyright laws of the United States, Title 17 of the United States Code, §101 *et seq.*  This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1338(a).  Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b)-(d) and 1400(b).

18.     III designed and developed an induction heater it has sold for several years known as the MINI-DUCTOR®, III Model MD-600.   This MINI-DUCTOR® utilizes various proprietary technology of III, including patented induction heater design, and proprietary software, logic and circuit boards.  Circuit boards used in the MINI-DUCTOR® were created using III's proprietary Gerber files.   Proprietary III bills of materials, and proprietary III customer and vendor information, are used by III to manufacture and sell the MINI-DUCTOR®.

19.     Charles Han and the corporate Defendants appropriated, copied and used III proprietary information relating to the manufacture of III's MINI-DUCTOR®, including III's bill of materials, vendor and customer information, and Gerber files useful in creating the printed circuit boards (PCBs) employed in the MINI-DUCTOR®, and used this III proprietary information in the manufacture of the BoltBuster induction heater unit, which is identical in material respects to III's MINI-DUCTOR® induction heater units.

20.     In furtherance of their misappropriation of III proprietary information important to the manufacture of the MINI-DUCTOR®, in 2004, one or more of the Hans (Charles, Phodi and/or Emily) and/or one or more employees of LACE and/or Qualitek forged certain documents in order to take possession of software owned by Jerry Marinello, which contained proprietary information of all of Marinello customers, including III proprietary information.

21.     Comparison photographs of the printed circuit board (PCB) topography of the MINI-DUCTOR® with the Boltbuster (Exhibit E, photos 006, 009 and 010) clearly show that the PCB topography is identical.  In fact, the upper right portion of the Boltbuster PCB includes a blacked-out area near the fan; it can be seen that this is where III's identification information and copyright notification mark was removed by or at the direction of one or more employees of LACE and/or Qualitek and/or one of the Hans (Charles, Phodi and/or Emily).  With other BoltBuster units, the III information and copyright marking has been painted over in green to attempt to match the color of the PCB (see Exhibit U, Metz Declaration).  The Defendants also copied the design of the heat dissipating terminals (HDT) of III's MINI-DUCTOR® (Exhibit E, photo 007); even the two smaller holes of the HDT toward the center are copied, to allow attachment to another of III's induction units, the MD-700.

22.     As a further example of the copious infringement, the BoltBuster induction heater operates in nearly precisely the same frequency range as the MINI-DUCTOR® (Exhibit F).

23.     The BoltBuster manual (Exhibit G) also includes substantial portions which are copied verbatim from III's MINI-DUCTOR® manual (Exhibit H), constituting further acts of copyright infringement (see Exhibit I, underlining common portions of III manual that are copied in the BoltBuster manual).  LACE also displays on its website an III Inductor Max (Exhibit B, "Gallery"), without authorization from III.

24.     An online store (www.soldersoreonline.com), on information and belief owned by Qualitek and/or affiliated with Qualitek[3], and showing the same telephone number as BoltBusterInc., is selling the BoltBuster on-line (see Exhibit J), and a Sales Order for the

_____

[3]     Publicly available records indicate that Qualitek manufactures soldering products, has 34 employees, and has 4 non-US affiliates located in Singapore, China, the Phillipines and Europe (Exhibit K).

BoltBuster induction heater and accessory Coil Kit and Owner's Manual CD lists Qualitek as the shipper (Exhibit T), so Qualitek and LACE are necessarily aware of, or reasonably should be aware of, and are participating in, the ongoing copyright infringement of III's proprietary technology.

25.     III owns its proprietary technology necessary for manufacturing its MINI-DUCTOR®/MD-600, including III's PCB design, its HDT design, its customer and vendor information, its bill of materials, and its Gerber files useful in making the PCBs used with the MINI-DUCTOR®.  On information and belief, the Defendants have appropriated, copied and infringed III's proprietary technology, by incorporating it into the BoltBuster induction heater sold on the BoltBusterinc.com website and on eBay and Amazon, for example (e.g., Exhibits J, P and U).  Accordingly, the Defendants have infringed III's copyrights by the above-referenced acts.

## COUNT 2 – TRADEMARK INFRINGEMENT

26.     III re-alleges and incorporates Paragraphs 1-25, above.

27.     This Court has jurisdiction over the subject matter of this action by virtue of the fact that this is a civil action arising under the United States Trademark Act, 15 U.S.C. §§ 1051-127, jurisdiction being expressly conferred in accordance with Section 39 of the United States Trademark Act, 15 U.S.C. § 1121, and Section 1338 (a) of the United States Judicial Code, 28 U.S.C. § 1338 (a).  This Court also has pendent jurisdiction over all related claims herein in accordance with Section 1338 (b) of the United States Judicial Code, 28 U.S.C. § 1338(b).

28.     Venue is proper in this judicial district in accordance with Section 1391(b) of the United States Judicial Code, 28 U.S.C. §1391(b), because a substantial part of the events or omissions giving rise to the claim occurred in this district.

29.    For more than eight (8) years, III has been using its MINI-DUCTOR® mark  and the name of its company, Induction Innovations, in interstate commerce in connection with the manufacture, sale and offer for sale of its MD-600 induction heater, as well as other models of its induction heaters, including within this judicial district (see Exhibit L, and www.inductioninnovations.com).  On October 9, 2012, III obtained a federal trademark registration from the U.S. Trademark Office for MINI-DUCTOR®, U.S. Reg. No. 4,221,532 (Exhibit L), for use with "hand-held induction power inverter[s]" (*id.*).

30.    In connection with the sales of its "Boltbuster" hand-held induction power inverter, the Defendants have used and infringed III's registered MINI-DUCTOR®  trademark, and also published web pages whose metadata uses, and therefore infringes, III's MINI-DUCTOR® mark (Exhibit M).

31.    On information and belief, the Defendants also use pay-per-click on Google using "Induction Innovations," infringing III's company name (see Exhibit R, showing that second listing is BoltBusterinc.com when "Induction Innovations" is Google-searched), and also use pay-per-click on Google using III's registered trademark MINI-DUCTOR®, infringing III's registered mark (see Exhibit R, first listing is BoltBusterinc.com when "miniductor" is Google-searched).  A Boltbuster product description also appears on both E-bay and Amazon websites, describing the "Bolt Buster Torchless *Mini Ductor* Tool," using the "Induction Innovations" name for keywords.

32.    Since about February, 2006, III has been using the mark Mini-Pad in connection with the sale of III's MINI-DUCTOR® induction heater units, for use in removing smaller decals and emblems from sheet metal (see http://www.theinductor.com/index.php?m=50&s=26, Exhibit S).  Recently, the Defendants have begun to offer for sale a pad, identical in appearance

to III's Mini-Pad, also called the "Mini-Pad" (see Exhibit J, page 4). This constitutes common law trademark infringement, as well as common law trade dress infringement.

33. III sold the first handheld induction heater designed for after-market automotive applications in the United States. Prior to the recent sale of the BoltBuster, III sold the only such handheld induction heater. III has common law trade dress and common law trademark rights in the handheld, external configuration of its MINI-DUCTOR® MD-600 induction heater. III also sells the only primarily-yellow with red lettering handheld induction heater within the United States, and the BoltBuster has appropriated and infringed both the same external configuration, and the primarily-yellow-with-red-lettering color, of the MINI-DUCTOR® (see comparison photo 008, Exhibit N). Accordingly, the Defendants have misappropriated and infringed III's common law trade dress and trademark rights.

## COUNT 3 – TRADE SECRET MISAPPROPRIATION

34. III realleges and incorporates Paragraphs 1-33, above.

35. Pursuant to 765 ILCS 1065 *et seq.*, the Defendants have violated the Illinois Trade Secrets Act by their above-referenced conduct. More specifically, III owned and developed information for manufacturing the MINI-DUCTOR®/MD-600, including but not limited to III's bill of materials, its customer and vendor information, its HDT design, and its Gerber files useful in the manufacture of its PCBs for its MD-600 MINI-DUCTOR® ("III Proprietary MD-600 Information"). III Proprietary MD-600 Information is: (1) sufficiently secret to derive economic value, actual or potential, from not being generally known to other persons who can obtain economic value from its disclosure or use; and 2) was the subject of efforts that are reasonable under the circumstances to maintain its secrecy or confidentiality. The Defendants misappropriated, copied and acquired this proprietary information of III, and used it

in the manufacture and sale of their BoltBuster induction heater. Additionally, the Defendants currently offer for sale the BoltBuster induction heater on-line, listing an ordering address and telephone number that is identical to the listed address and telephone number of "BoltBusterInc.," Qualitek and LACE (see Exhibit J).

**COUNT 4 -- FEDERAL UNFAIR COMPETITION (LANHAM ACT)**

36.　　III re-alleges and incorporates Paragraphs 1-35, above.

37.　　On information and belief, the BoltBuster induction heater was designed to look like the MD-600 MINI-DUCTOR® (see, e.g., Exhibit O, 12/1/2012 blog, commenting that "Bolt buster looks like the early version of the mini doctor which I have…."). The yellow surface with red lettering, coupled with the identical external cylindrical configuration, a similar label, and a similar HDT, creates a similar overall visual impression (see Exhibit N). Further, the Defendants are misrepresenting the development of the BoltBuster (see Exhibit V, ebay.com website posting: "We are one of the original designers of the Mini Handheld Ductor Tool. The design has been in use for over 10 years and It Works Flawlessly.") Accordingly, the sale of the BoltBuster induction heater unit by the Defendants, which is sold using III's MINI-DUCTOR® registered trademark, and which appropriates III's trade dress and common law trademark rights, is likely to cause confusion among the relevant purchasing public in the automotive aftermarket for handheld  induction heating units, and constitutes unfair competition in violation of the statutory federal unfair competition laws, including the federal trademark act known as the Lanham Act, 15 U.S.C. §1125, *et seq.*,

**COUNT 5 – CONSUMER FRAUD AND DECEPTIVE**<br>**BUSINESS PRACTICES ACT OF THE STATE OF ILLINOIS**

38.　　III re-alleges and incorporates Paragraphs 1-37, above.

11

39. For the reasons plead above, including but not limited to Paragraph 37, above, the Defendants have also violated the Consumer Fraud and Deceptive Business Practices Act of the State of Illinois, 815 ILCS 505/1 *et seq.*

### COUNT 6 -- COMMON LAW UNFAIR COMPETITION

40. III re-alleges and incorporates Paragraphs 1-39, above.

41. The aforesaid use by the Defendants of III's copyrights, trademarks and trade dress, including but not limited to the statements plead in Paragraph 37, above, each constitutes unfair competition in violation of the common law of the several states, including the State of Illinois.

### COUNT 7 – TORTIOUS INTEFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

42. III re-alleges and incorporates Paragraphs 1-41, above.

43. The aforesaid use by the Defendants of III's copyrights, trademarks and trade dress, constitutes tortious interference with III's prospective economic advantage, as Defendants' infringing use and sale of the BoltBuster is improperly interfering with III's relationships with its customers of its MINI-DUCTOR®, injuring III's reputation with its customers, and detrimentally impacting at least III's MINI-DUCTOR® sales. This is shown, for example, by the misrepresentations made by the defendants (see, e.g, Exhibit U, ebay.com website posting: "We are one of the original designers of the Mini Handheld Ductor Tool. The design has been in use for over 10 years and It Works Flawlessly.")

### Relief Requested

WHEREFORE, Plaintiff Induction Innovations, Inc. asks this Court to enter judgment against each of the defendants, and their subsidiaries, agents, servants, employees, attorneys and all persons in active concert or participation with the defendants, granting III the following relief:

12

44.     For copyright infringement, pursuant to 17 U.S.C. §§501-506:

(a)     A judgment that the Defendants have each committed copyright infringement of III's works, described above.

(b)     A temporary, preliminary and final injunction to prevent further infringement of III's copyrighted materials, pursuant to 17 U.S.C. § 502.

(c)     An accounting of all materials used in the copyright infringement, the impounding of all such copies of materials used in the copyright infringement, including but not limited to PCBs, HDTs, Gerber files, plates, molds, matrices, masters, the impounding of all records documenting the manufacture, sale or receipt of the things involved in such copyright violations, the impounding of all equipment used in the manufacture of the copied BoltBuster induction heater units, and the destruction of same as part of a final judgment or decree, pursuant to 17 U.S.C. § 503.

(d)     The greater of: (1) III's actual damages and any additional profits of the Defendants' attributable to the copyright infringement and not taken into account in computing III's actual damages, pursuant to 17 U.S.C. § 504(b); or (2) statutory damages in the amount of $150,000 for each work that is the subject of willful copyright infringement, pursuant to 17 U.S.C. §504(c)(2).

(e)     III's recovery of its full costs, and its reasonable attorney's fees, pursuant to 17 U.S.C. § 505.

(f)     Due to the willful nature of the copyright infringement committed by the Defendants, imprisonment for up to one (1) year of Charles Han and those who acted in willful concert with him, pursuant to 17 U.S.C. §506 and 18 U.S.C. § 2319(c).

(g)     A preliminary injunction against further such infringement; and

13

(h)      such other and further relief as this Court and/or a jury may deem proper and just.

45.      For federal and state trademark and trade dress infringement, pursuant to 15 U.S.C. §1114 *et seq.*:

(a)      A judgment that the Defendants have each committed trademark infringement of III's works, described above.

(b)      A temporary, preliminary and final injunction  to prevent further infringement of III's trademarked materials, including but not limited to the cessation of all said infringements using the Internet such as through the use of search engines employing infringing terms and/or metadata.

(c)      Defendants' profits, any damages sustained by III, and the costs of this action, together with prejudgment interest, pursuant to 15 U.S.C. §1117.

(d)      The destruction of infringing articles, pursuant to 15 U.S.C. §1118.

(e)      A preliminary injunction against further such infringement; and

(f)      Such other further relief, including attorney fees, as this Court and/or a jury may deem proper and just.

46.      For trade secret misappropriation, pursuant to 765 ILCS §1065 *et seq.*:

(a)      A judgment that the Defendants have each committed trade secret misappropriation III's confidential and proprietary trade secrets, described above.

(b)      A temporary, preliminary and final injunction against each of the Defendants to prevent further misappropriation of III's confidential and proprietary trade secrets, pursuant to 765 ILCS §1065/3.

(c)     Damages for trade secret misappropriation awarded against each of the Defendants, including actual loss to III caused by the Defendants' misappropriation, as well as the unjust enrichment caused by the misappropriation that is not taken into account in computing actual loss, or a reasonable royalty for the Defendants' unauthorized disclosure and use of III's trade secrets, pursuant to 765 ILCS §1065/4(a).

(d)     Exemplary, punitive damages for the Defendants' willful and malicious misappropriation, in an amount exceeding twice any award under subsection (c), above, pursuant to 765 ILCS §1065/4(b).

(e)     A preliminary injunction against further such misapproriation; and

(f)     Reasonable attorney's fees, pursuant to 765 ILCS §1065/5.


## DEMAND FOR JURY TRIAL

Plaintiff hereby demands that all issues triable to a jury be determined by jury.



DATED:   January 11, 2013                    Respectfully submitted,


                                             s/Michael P. Mazza/
                                             Michael P. Mazza
                                             Illinois Bar No. 6201609
                                             Dana Drexler Alvarado
                                             Illinois Bar No. 6291515
                                             Michael P. Mazza, LLC
                                             686 Crescent Blvd.
                                             Glen Ellyn, Illinois 60137-4281
                                             Phone: (630) 858-5071
                                             Fax: (630) 282-7123
                                             Email: mazza@mazzallc.com

Mark Hellmann
Illinois Bar. No. 1182269
Hellmann Law Group
55 West Wacker Drive
Suite 1400
Chicago, Illinois. 60601
Phone: 312-580-9070
Fax:    312-436-2289
Email: Mark@Hellmann.com

**ATTORNEYS FOR PLAINTIFF**