**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| INDUCTION INNOVATIONS, INC., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>QUALITEK INTERNATIONAL, INC., )<br>LACE TECHNOLOGIES, INC., )<br>and CHARLES HAN, an individual, )<br>)<br>Defendants. )<br>_____)<br>LACE TECHNOLOGIES, INC., )<br>)<br>Counter-Plaintiff, )<br>)<br>v. )<br>)<br>INDUCTION INNOVATION, INC., )<br>)<br>Counter-Defendant. )<br>_____)<br>LACE TECHNOLOGIES, INC., )<br>)<br>Cross-Plaintiff, )<br>)<br>v. )<br>)<br>JERRY MARINELLO, an individual, )<br>)<br>Cross-Defendant. ) | Case No. 13 C 0219<br><br><br>Judge Amy J. St. Eve |

**ORDER**

The Court, in its discretion, grants in part and denies in part Plaintiff's motion to enforce the settlement agreement [180] and Defendants' motion to enforce the settlement agreement [184].

**STATEMENT**

On June 5, 2013, Plaintiffs Induction Innovations, Inc. and Sarge Holdings Co., LLC (collectively "Induction") filed a seven-count Amended Complaint against Defendants Qualitek International ("Qualitek"), LACE Technologies ("LACE"), and Charles Han (collectively "the

LACE Defendants"), alleging trademark and copyright violations under the Lanham Act, 15 U.S.C. § 1051, *et seq.*, and the Copyright Act of 1976, 17 U.S.C. § 101, *et seq.*, along with state law claims. Prior to the filing of the Amended Complaint, on April 4, 2013, the LACE Defendants filed counterclaims against Induction alleging antitrust violations under the Sherman Act, 15 U.S.C. § 1, *et seq.,* and Clayton Act, 15 U.S.C. § 15, *et seq.* The LACE Defendants also filed cross-claims against Jerry Marinello — LACE's former Vice President of Operations — for breach of his employment agreement, theft, tortious interference with existing and prospective economic advantage, and breach of fiduciary duty.

The focus of Induction's lawsuit against the LACE Defendants concerns induction heaters for the automotive aftermarket. In particular, Induction sells a commercialized induction heater called the MINI-DUCTOR® (MD-600). The MINI-DUCTOR® technology utilizes U.S. Patent 6,563,096 (the "'096 patent") and U.S. Patent 6,670,590 (the "'590 patent"), both of which list Thomas Gough and David Pacholok as the inventors. LACE manufactures and sells the BoltBuster™ torchless heat induction tool. LACE's cross-claims against Marinello regarded his employment with Circuits By Us, Inc. ("CBUS"), a company Induction's President, Thomas Gough, formed. CBUS engages in the same or substantially the same business as LACE.

After conducting a preliminary injunction hearing on June 25, 2013, the parties, including Mr. Marinello, informed the Court that they were interested in settling this lawsuit. Thereafter, on July 9, 2013, the Court conducted an all day settlement conference at which the parties agreed to settle. The Court then put the terms of the settlement on the record. The Court dismissed this lawsuit without prejudice allowing the parties to formalize a written settlement agreement in accordance with the terms discussed and put on the record at the settlement conference.[1] Before the Court are Induction's and the LACE Defendants' cross-motions to enforce the settlement agreement. For the following reasons, the Court, in its discretion, grants in part and denies in part Plaintiff's motion to enforce the settlement and Defendants' motion to enforce the settlement.

## LEGAL STANDARD

The parties do not dispute that Illinois law governs the enforcement of the settlement agreement. *See Auto–Owners Ins. Co. v. Webslov Computing, Inc.,* 580 F.3d 543, 547 (7th Cir. 2009) ("Courts do not worry about conflicts of laws unless the parties disagree on which state's law applies."); *see also Abbott Labs. v. Alpha Therapeutic Corp.,* 164 F.3d 385, 387 (7th Cir. 1999) ("Local contract law governs the construction and enforcement of settlement agreements."). Settlement agreements are enforced like any other contract. *See In re Illinois Bell Tele. Link-Up II*, 994 N.E.2d 553, 558, 373 Ill. Dec. 784 (1st Dist. 2013) (settlement "agreements are construed and enforced under principles of contract law"). "Under Illinois law,

---

[1] Because the Court dismissed this lawsuit without prejudice, the Court has jurisdiction to enforce the terms of the parties' settlement agreement. *See Dupuy v. McEwen*, 495 F.3d 807, 810 (7th Cir. 2007); *Shapo v. Engle,* 463 F.3d 641, 646 (7th Cir. 2006).

a settlement is valid if there is an offer, acceptance, and a meeting of the minds." *Elustra v. Mineo,* 595 F.3d 699, 708 (7th Cir. 2010). Also, "[l]ike any other contract, the essential terms of the settlement agreement must be definite and certain for it to be enforceable." *City of Chicago v. Ramirez,* 366 Ill.App.3d 935, 946, 852 N.E.2d 312, 324, 304 Ill.Dec. 62, 74 (1st Dist. 2006); *see also Downs v. Rosenthal Collins Group, L.L.C.*, 963 N.E.2d 282, 297, 357 Ill.Dec. 329, 344 (1st Dist. 2011) ("For an oral contract to be valid and enforceable, its terms must be definite and consistent."). In addition, "[a]mbiguity will prevent the enforcement of a contract only where the ambiguity affects the material terms of the contract." *Pritchett v. Asbestos Claims Mgmt. Corp.,* 332 Ill.App.3d 890, 897, 266 Ill.Dec. 207, 773 N.E.2d 1277 (5th Dist 2002). "The decision whether or not to enforce a settlement is one committed to the district court's discretion." *Collins v. Educational Therapy Ctr.,* 184 F.3d 617, 620 (7th Cir. 1999).

## ANALYSIS

As discussed, after the Court conduced a settlement conference on July 9, 2013, the parties settled this lawsuit. On that same date, the Court put the terms of the settlement agreement on the record. As the record reflects, the Court dismissed the lawsuit without prejudice giving the parties time to complete the paperwork necessary to memorialize the settlement agreement. Here, the parties do not dispute that they entered into a settlement agreement, rather, they are contesting the terms of the settlement agreement discussed at the July 9, 2013 settlement conference. Specifically, Induction maintains that "[i]t was clearly contemplated that the parties would reduce the settlement to a written agreement that would more specifically address the agreed matters between the parties." The LACE Defendants, on the other hand, argue that Induction seeks to add new terms to the settlement agreement not contemplated by the parties during settlement negotiations.

First, the parties dispute the exact definition of the product at issue. On the record, the Court stated that "[u]nder the terms of the settlement, LACE can continue to manufacture and sell the BoltBuster II." The Court then asked Induction's counsel and Mr. Gough whether they agreed to the terms of the settlement, to which they both answered yes. Induction now argues that the physical BoltBuster II used as an exhibit at the preliminary injunction hearing should be used to measure what the LACE Defendants are permitted to manufacture and sell under the settlement agreement. The LACE Defendants argue that Induction's definition is too narrow and maintain that Induction's own definition of the BoltBuster II set forth in Induction's chart "Intellectual Property at Issue for Preliminary Injunction Hearing" is the proper definition of the product at issue. (R. 149.) Induction's chart, however, does not describe the BoltBuster II, but sets forth the basis of Induction's trademark, trade dress, and trade secret claims.

As the preliminary injunction testimony and documentary evidence revealed, in 2009 Induction started manufacturing and selling the MINI-DUCTOR II (MD-700) that has a new, octagon design and differs from the MD-600 and BoltBuster II at issue in the lawsuit. Moreover, Induction no longer manufactures the MD-600. Thus, the necessity to narrowly define the BoltBuster II was not discussed at the settlement conference. As such, based on the settlement discussions and agreement on the record, the product that the LACE Defendants can

manufacture and sell is the BoltBuster II as it existed at the time of the settlement on July 9, 2013. Although this is a general definition, the parties did not contemplate a broader or narrower definition at the settlement conference. *See Gallagher v. Lenart,* 367 Ill.App.3d 293, 301, 854 N.E.2d 800, 807, 305 Ill.Dec. 208, 215 (1st Dist. 2006) (Under Illinois law "a court cannot alter, change or modify the existing terms of a contract or add new terms or conditions to which the parties do not appear to have assented."). Also, because Induction no longer manufacturers the MD-600, this definition is sufficiently concise to be enforceable. *See Ramirez,* 366 Ill.App.3d at 946.

Next, Induction argues that the LACE Defendants did not bargain for worldwide rights to sell the BoltBuster II at the settlement conference, and thus this should not be a term of the settlement agreement. Because the LACE Defendants do not address this issue in their legal memoranda, they have abandoned any such claim. *See Steen v. Myers,* 486 F.3d 1017, 1020 (7th Cir. 2007) (absence of discussion in legal brief amounts to abandonment of claims).

Moreover, at the settlement conference, the parties also agreed to a fee-shifting provision for future lawsuits. As stated on the record, "[i]f Induction has to sue LACE or Qualitek in the future for any trademark or trade dress or trade secret claims regarding its products, if Induction is the prevailing party in the litigation, there will be a fee-shifting provision." Again, the Court asked Induction's counsel and Mr. Gough whether they agreed to the terms of the settlement, to which they both answered yes. In the present motion, Induction argues that the agreement should also include its patent rights as a basis for the fee-shifting provision. Not only did the parties not agree to include the patent rights in the settlement terms at the settlement conference, Induction did not bring any claims based on its patents in this lawsuit. *See Pritchett,* 332 Ill.App.3d at 897 (courts cannot "add another term about which an agreement is silent.") (citation omitted). Because the parties' agreement is silent as to Induction's patent rights, the Court cannot add this term to the existing settlement agreement.

In addition, Induction argues that Defendants' affiliates, namely, persons or entities that directly or indirectly own or control, or are controlled by the LACE Defendants, should be bound by the settlement agreement. These unnamed affiliates, however, were not part of the settlement negotiations nor were they parties to the lawsuit. Induction's desire to add these unknown parties to the settlement agreement is thus untenable. *See Skycom Corp. v. Telstar Corp.,* 813 F.2d 810, 814-15 (7th Cir. 1987) (the parties' intent "depends on what the parties express to each other and to the world, not on what they keep to themselves.").

The Court's order regarding Mr. Pacholok's counsel in the related lawsuit (13 C 5102) and Mr. Pacholok's affidavit filed in that lawsuit obviate the need for the Court to address the parties' arguments over the confidentiality of the agreement.[2] In sum, the agreement will remain confidential and cannot be discussed outside of the parties present at the end of the July 9, 2013

---

[2] On July 17, 2013, Induction filed a lawsuit against Pacholok alleging breach of fiduciary duty in relation to the '096 patent and '590 patent.

settlement conference when the Court put the terms of the settlement on the record.

Finally, Induction argues that CBUS, Mr. Marinello's employer, should be included as a party to the settlement because Mr. Marinello has passed away. CBUS, however, is not a party to this lawsuit nor did the parties mention CBUS at the settlement conference. *See Gallagher,* 367 Ill.App.3d at 301 ("The primary objective when construing a contract is to determine and give effect to the intention of the parties at the time they entered into the contract."). The Court cannot add a party to the settlement agreement that the parties did not contemplate in their settlement discussions. Induction, Mr. Marinello's attorney William Barr, and Mr. Marinello's estate must determine how to execute Mr. Marinello's release.

Because counsel and the parties negotiated the settlement in good faith and the material terms of the settlement agreement are definite and certain, the Court, in its discretion, grants in part and denies in part Induction's and the LACE Defendants' motions to enforce the settlement agreement as discussed in this order.

**Dated:** November 4, 2013

                                                 **AMY J. ST. EVE**
                                                 **United States District Court Judge**